IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| TATRIE HARRIS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 14-2331-JDT |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
|     Defendant. | ) | |

ORDER AFFIRMING DECISION OF COMMISSIONER

Plaintiff has filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for supplemental security income ("SSI") benefits based on disability under Title XVI Social Security Act ("Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on February 4, 2013.

On April 17, 2013, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The appeals council affirmed the ALJ's decision. This decision became the Commissioner's final decision. Plaintiff filed this action, requesting reversal of the decision of the Commissioner or a remand. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final

decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g), and whether the correct legal standards were applied. See Lindsley v. Commissioner, 560 F.3d 601, 604–08 (6th Cir. 2009); Kyle v. Commissioner, 609 F.3d 847, 854 (6th Cir. 2010).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. See Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on January 11, 1967. R. 308. She earned a GED. R. 308-9. Plaintiff alleges disability beginning March 28, 2009, due to a nervous breakdown and depression. R. 164.

The ALJ enumerated the following findings: (1) Plaintiff has not engaged in substantial gainful activity since the application date; (2) Plaintiff has the severe impairment of an affective disorder; however, she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20

C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (3) Plaintiff has the residual functional capacity to perform the full range of work at all exertional levels; she is able to attend and concentrate for two-hour periods but is limited to unskilled work that involves simple, repetitive tasks; she is further limited to work with no contact or interaction with the public and only occasional contact and interaction with coworkers and supervisors on a superficial level; she is limited to low stress work with no strict production quotas; she is able to deal with changes in the work environment and perform decision making consistent with unskilled work; (4) Plaintiff's residual functional capacity does not preclude performance of her past relevant work as a warehouse packer; (5) Plaintiff was not under a "disability" as defined in the Act at any time through the date of this decision.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. Born v. Secretary, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Id.

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(a)(4); Howard v. Commissioner, 276 F.3d 235, 238 (6th Cir. 2002). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis proceeded to the fourth step. The ALJ found that Plaintiff could perform her past relevant work as a warehouse packer.

Plaintiff claims that the Commissioner should have assigned controlling weight to a medical source statement which was completed by Maureen McGowen, a social worker, on June 7, 2013. Plaintiff characterizes Ms. McGowen as a treating source. Plaintiff's argument is not persuasive.

Ms. McGowen completed the form on June 7, 2013, seven weeks after the ALJ issued the final decision. R. 23, 508. The Appeals Council considered the form but concluded that it did not justify changing the ALJ's decision. When the Appeals Council has considered evidence but declines to review the ALJ's decision, the district court cannot consider the new

4

evidence in deciding whether to uphold, modify, or reverse the ALJ's decision. See Cline v. Commissioner, 96 F.3d 146, 148 (6th Cir. 1996).

Additionally, there is no evidence in the record that Ms. McGowen was a treating source, and there is no medical examination evidence supporting her opinion. Furthermore, Ms. McGowen is a social worker, which is classified as an "other medical source." See 20 C.F.R. § 416.913(a) (non-physician medical professionals are other medical sources to be distinguished from acceptable medical sources like physicians). Thus, there is no reason to give Ms. McGowen's opinion any weight. See 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

Plaintiff next argues that the ALJ improperly assessed her credibility. When a claimant alleges disability based on her subjective complaints, she must present objective medical evidence of an underlying medical condition. See 20 C.F.R. §§ 404.1529, 416.929. If a medically determinable condition exists, the ALJ must decide if the objective medical evidence confirms the severity of the alleged symptoms arising from the condition or if the condition is of such severity that it could reasonably be expected to give rise to the alleged symptoms. See 20 C.F.R. §§ 404.1529, 416.929.

Here, although Plaintiff had numerous complaints, she failed to provide objective medical evidence confirming the severity of her alleged symptoms, and the record as a whole does not show that her condition was of disabling severity. See 20 C.F.R. §§ 404.1529(c)(2)-(4), 416.929(c)(2)-(4). Furthermore, the ALJ determined that there was

5

evidence that Plaintiff's mother was trying to get her to "act crazy" so she could get on disability.

For example, in 2001, Plaintiff was treated for an apparent psychotic disorder, but her examination was normal, and Plaintiff's story often conflicted with that of her mother. R. 289-90. The mother claimed that Plaintiff believed the food in the house was poisoned, but Plaintiff said that she believed that the food was merely spoiled. R. 289. In 2005, Plaintiff reported that her mother had tried to get her "act crazy" in order to obtain disability. R. 18, 308-09, 312-13, 316. She improved once she agreed to take medication and received inpatient treatment. R. 310. In 2006, Plaintiff had fairly normal mental status except for limited judgment and insight; she was noted to be fully oriented, with euthymic mood and affect, fair attention and concentration, and average intelligence. R. 18, 321-22.

Plaintiff underwent a consultative examination with Paul Leonard, Ph.D., who noted that Plaintiff had applied for disability benefits in the past, that she was currently living with her mother and her brother, and that her brother and mother were presently receiving disability benefits. R. 339. Plaintiff had fair concentration and memory, but she appeared to be exaggerating her level of limitation. R. 341. Dr. Leonard concluded that Plaintiff had a mild impairment in her ability to understand, show initiative, sustain concentration, and remember; moderate limitation in persistence and social interaction; and moderate to severe impairment in her adaptability. R. 341. Plaintiff's activities of daily living were mildly to moderately impaired, but Dr. Leonard noted that both her brother and mother were disabled and, thus, her "assertion that her mother and brother do most of her [activities of daily living]

6

is dubious and should be verified." R. 341.

Plaintiff returned to Dr. Leonard in September 2007. She admitted that she performed simple food preparation, shopped with her mother, and did laundry, cleaning, and driving. R. 387. Dr. Leonard concluded that she had mild to moderate limitations and that she "could function in a work environment based on her assets and liabilities." R. 389. Treatment notes from July and August 2010 showed that Plaintiff had fair stability and no psychosis. R. 436-37.

Plaintiff underwent a consultative examination by Sara Bennett Lau, Ph.D., on June 21, 2011, which again suggested that Plaintiff may have been attempting to exaggerate her level of impairment or was not giving full effort during the examination. R. 19-20, 463. Dr. Lau noted that at the beginning of the interview, Plaintiff was minimally responsive to questions and "simply stared." R. 463. Dr. Lau believed that Plaintiff did not appear to make a good effort to communicate, possibly due to depression/mental illness, social discomfort, limited alertness, side effects, or "possible malingering." R. 463, 465. Dr. Lau reported that as "the interview progressed, claimant appeared to be less impaired and provided an adequate personal history for herself, albeit with minimal detail." R. 466. Dr. Lau concluded that, if truthful, Plaintiff was unable to perform simple work-related tasks like following instructions and communicating, but the doctor proposed the possibility that Plaintiff was malingering. R. 466.

In addition to evidence of dissembling for the purpose of receiving disability benefits, there was evidence that Plaintiff had less treatment than would be expected if Plaintiff were

7

disabled. Plaintiff testified that she saw her doctor every three months, but there were only two medical visits after the beginning of the relevant period, i.e., October 25, 2010, when she filed her SSI application. R. 20, 38.3 On February 14, 2011, she reported that she was doing well with no new complaints. R. 461. On April 11, 2011, she was noted to be "concrete," but she reported that she had no new complaints, and that her sleep was "okay." R. 459. No acceptable medical source suggested at any time during the relevant period that Plaintiff had disabling-level limitations. Accordingly, substantial evidence supports the ALJ's credibility determination.

The vocational expert testified that an individual with Plaintiff's work history, education, and residual functional capacity could perform Plaintiff's past relevant work as a warehouse packer because it was a low stress job without production quotas. R. 47. A claimant will be found not disabled if she can perform her past relevant work either as she performed it in the past or as it is generally performed in the national economy. See Smith v. Secretary, 893 F.2d 106, 110 (6th Cir. 1989).

Based on the evidence in the record, substantial evidence supports the ALJ's findings. Therefore, the decision of the Commission is AFFIRMED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

       s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE